**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHY H., | ) | |
|                   Plaintiff, | ) | |
| | ) | Case No. 14-cv-2131 |
|     v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| NANCY A. BERRYHILL, Acting, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
|                  Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiff Kathy H.'s motion for summary judgment [45], seeking review of the Commissioner of Social Security's decision that Plaintiff is not entitled to a period of disability or disability insurance benefits. Plaintiff asks that the Court reverse the ALJ's decision and to find her disabled from April 16, 2010 or, in the alternative, remand the case for additional proceedings. Also before the Court is the Commissioner's motion for summary judgment [50]. The Commissioner asks that the Court enter a judgment affirming the ALJ's decision. For the reasons stated below, the Court denies Plaintiff's motion for summary judgment [45] and grants the Commissioner's motion for summary judgment [50]. The Court affirms the Commissioner's decision. Civil case terminated.

I.    **Background[1]**

    A.    **Procedural History**

This appeal marks Plaintiff's second request for judicial review regarding her application for disability benefits beginning as of April 16, 2010. On April 25, 2011, Plaintiff applied for a

---

[1] Because the parties do not address it, the Court concludes that the parties do not dispute the ALJ's summary of the evidence unless specifically noted otherwise. The Court will therefore cite to the ALJ's decision for the case's history unless otherwise noted.

period of disability and disability insurance benefits, alleging that her disability began on June 23, 2006. [Administrative Record ("A.R.") at 982.] Her application was denied on July 13, 2011. [*Id*.] She subsequently sought a hearing before an Administrative Law Judge ("ALJ"), which was held on July 19, 2012, and where Plaintiff, a medical expert, and a vocational expert testified. [*Id*. at 67–126.] On November 19, 2012, the ALJ found that Plaintiff was not disabled and could perform a significant number of jobs in the national economy. [*Id*. at 14–45.] Plaintiff then requested review of this decision, which the Appeals Council denied. [*Id*. at 1–6, 12–13.]

Plaintiff appealed the Commissioner's decision (which became final after the Appeals Council denied review) to this Court on March 26, 2014. See generally [1]. Upon reviewing the record, Judge Zagel remanded the case to the Social Security Administration pursuant to sentence six of 42 U.S.C. § 405(g) in light of new evidence presented on appeal regarding one of Plaintiff's treating doctors, Dr. Bina Oommen. [*Id*.] The Appeals Council subsequently remanded Plaintiff's claim to the ALJ. [A.R. at 1168–71.]

The ALJ conducted another hearing on August 18, 2017, at which Plaintiff, a psychological medical expert, a physician medical expert, and a vocational expert testified. [*Id*. at 1012–69.] On September 13, 2017, the ALJ issued a partially favorable decision to Plaintiff, finding her disabled as of May 19, 2015, but not prior to that date. [*Id*. at 999.] The Commissioner and Plaintiff subsequently motioned to reopen this action. See generally [39]; [42]. This Court granted both motions and reopened the case. See generally [44]. Plaintiff subsequently filed a motion for summary judgment [45], arguing that the ALJ had made a number of errors that resulted in her failure to find Plaintiff disabled prior to May 19, 2015.

The ALJ noted, and the parties agree, that although Plaintiff claims disability as of June 23, 2006, the relevant period at issue begins on April 16, 2010. [*Id*. at 982]; [46, at 2]; [51, at 2].[2] Thus, Plaintiff specifically appeals the ALJ's finding that she was not disabled from April 16, 2010 to May 19, 2015.

## B.      Relevant Medical Evidence

Plaintiff alleges that she qualifies as disabled due to the following constellation of conditions: lower back problems, fibromyalgia, lumbar radiculopathy, neuropathy in the right leg, urinary incontinence, a bulging disc in her lower back, loss of balance, sacroiliac joint dysfunction, a mood disorder, nerve problems, and ankle problems. [A.R. at 1449.] She stopped working in 2006 due to these conditions. [*Id*.] Prior to that, Plaintiff worked as medical assistant. [*Id*. at 1057.] In addition to the ailments listed above, Plaintiff claims to suffer migraine headaches every other day, [*id*. at 1457], and maintains that she cannot use a checking or savings account because of her inability to concentrate. [*Id*. at 1461.] Her conditions also affect her ability to stand, sit, walk, hear, concentrate, use her hands, and follow instructions, among other things. [*Id*. at 1462.] Plaintiff takes medication for some of these conditions—Atenolol for high blood pressure, Tramadol for pain; Xanax for anxiety, and Sumatriptan for migraines. [*Id*. at 1490.]

## C.      The August 18, 2017 Hearing before the ALJ

On August 18, 2017, the ALJ held a hearing regarding Plaintiff's eligibility for disability benefits from April 16, 2010 to present. [*Id*. at 1014.] Plaintiff, represented by counsel, testified

---

[2]  This is Plaintiff's second application for disability benefits. Plaintiff's first application for disability insurance was denied by an ALJ on April 16, 2010, denied review by the Appeal Council, and subsequently affirmed in federal court. [A.R. at 982]; see *Horsky v. Astrue*, 2013 WL 1087560 (N.D. Ill. Mar. 13, 2013). Plaintiff may not seek any benefits from June 23, 2006 to April 16, 2010 in light of the final determination that she was not entitled to those benefits.

at this hearing in addition to Dr. Larry Kravitz, a psychological medical expert, Dr. Chukwuemeka Ezike, a physician medical expert, and Leanne Kerr, a vocational expert. [*Id*. at 1012–69.]

### 1. Plaintiff's Testimony

Plaintiff testified that she stopped working in 2007 because of an accident in 2006. [*Id*. at 1018.] Her right leg fell into a sinkhole which damaged her lower back, pelvis, and leg. [*Id*. at 1018–19.] She explained that the injuries to her lower back and legs as well as her migraines—which she stated occur three times a day and cause her to vomit 10 to 15 times a week—have prevented her from returning to work. [*Id*. at 1029.] She has had migraines since she was in her twenties and takes medication for them, which sometimes helps but is completely ineffective at other times. [*Id*. at 1040.] She also stated that her ailments cause her so much pain that she cannot bear to be touched, including by her husband. [*Id*. at 1035.] Although she received a Lyrica prescription to assuage her fibromyalgia, Plaintiff reported that she stopped taking the medicine because it made her very dizzy and did not replace the Lyrica with anything else. [*Id*. at 1035–36.]

Plaintiff's weight has increased from 125 pounds at the time of her accident in 2006 to 252 pounds as of the date of her testimony. [*Id*. at 1029.] Additionally, she has smoked consistently for the last ten years, but does not use any other drug, including alcohol. [*Id*. at 1022–23.] Plaintiff has never gone to see a psychiatrist or psychologist. [*Id*.] With regard to physical therapy, Plaintiff testified that she had lost count of how many times she has been to physical therapy and that her insurance does not cover it anymore. [*Id*. at 1025–26.] Plaintiff spends most of her days in bed, watching tv and trying to get sleep. [*Id*. at 1026.] She wakes up between five to seven times a night. [*Id*. at 1031.]

Plaintiff began using a walker in April 2017 and used a cane for approximately three to four years before to that. [*Id*. at 1025.] She has had many issues with her legs, including neuropathy,[3] meralgia paresthetica,[4] groin and hip pain, SI joint dysfunction, a twisted pelvis, and ankle surgery from falling down the stairs. [*Id*. at 1037–40.] Finally, Plaintiff also has had trouble with her hands, stating that she can move them for about five to ten minutes before they start getting numb and swollen. [*Id*. at 1067.]

## 2. Psychological Medical Expert's Testimony

The ALJ obtained testimony from an impartial clinical psychologist Larry Kravitz, Ph.D. [*Id*. at 1040.] Dr. Kravitz asked Plaintiff if she took any medications for depression or anxiety. [*Id.* at 1042.] Plaintiff responded that she has been taking Xanax three times a day for the last thirty years. [*Id*.] After reviewing the medical evidence and hearing Plaintiff's testimony, Dr. Kravitz explained that the evidence regarding Plaintiff's psychiatric condition was very limited and somewhat vague. [*Id*. at 1043.] For example, he noted that Plaintiff had been diagnosed with a dysthymic disorder, but that her mental status as of September 2015 was fairly intact, except that she had some difficulty with short-term memory. [*Id*.] Additionally, despite the absence of any current psychological documentation, Dr. Kravitz concluded that the dysthymic disorder continues to be a critical diagnosis as Plaintiff seems to have a sense of hopelessness, a depressed mood, and some level of anhedonia.[5] [*Id*.] Given the limited amount of treatment Plaintiff had received for

---

[3] Neuropathy is damage to the nerves, which usually causes weakness, numbness, and pain. Peripheral Neuropathy, Mayo Clinic (May 22, 2019), https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061.

[4] Meralgia paresthetica is nerve compression in the thigh which causes numbness and pain in the outer thigh. Meralgia Paresthetica, Mayo Clinic (March 8, 2018), https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/symptoms-causes/syc-20355635.

[5] Anhedonia is the inability to feel pleasure, usually a result of depression. What is Anehdonia?, WebMD (Oct. 25, 2018), https://www.webmd.com/depression/what-is-anhedonia#1.

her mental issues, Dr. Kravitz recommended that the ALJ should either have Plaintiff reevaluated and procure an updated mental health status or give Plaintiff at least a moderate limitation in concentration, pace, and persistence. [*Id*.] He added that he "would find it unlikely that she'd be able to persist on more than a simple, routine tasks in the work environment on a consistent basis." [*Id*.] Dr. Kravitz further testified that he believed that Plaintiff had mild restrictions to remembering and understanding information, mostly because he did not have enough documentation to support a finding beyond that. [*Id*. at 1044.] Finally, Dr. Kravitz stated that fibromyalgia, from a mental point of view, could affect someone's concentration and memory, because the pain—referred to as a "fibro fog"—distracts the person and makes concentration difficult. [*Id*. at 1045.]

### 3. Testimony of Physician Medical Expert

The ALJ also obtained testimony from an impartial physician, Chukwuemeka Ezike, PhD. [*Id*. at 1046.] Dr. Ezike explained that Plaintiff's medically determinable impairments included: lumber degenerative disc disease, cervical disc herniation, right lateral femoral neuropathy, left ulnar nerve entrapment, left ankle fracture, obesity, fibromyalgia, and migraine headaches. [*Id*. at 1047–48.] He then concluded that these impairments did not fall into any Social Security Administration listing. [*Id*. at 1048.] Dr. Ezike also specified that Plaintiff has had chronic pain since at least 2010. [*Id*. at 1054.] Finally, Dr. Ezike provided Plaintiff's residual functional capacity. In Dr. Ezike's estimation, Plaintiff could sit for six hours per day and stand for two hours. [*Id*. at 1048.]

### 4. Testimony of Vocational Expert

Finally, the ALJ obtained testimony from an impartial vocational expert, Leanne Kerr. [*Id*. at 1057.] After noting that Plaintiff previously worked as medical technician, Kerr opined that

Plaintiff could no longer work in that position. [*Id*. at 1059.] Nonetheless, Kerr proceeded to explain that Plaintiff could work certain positions based on her age, education, work experience, and residual functional capacity. [*Id*. at 1058.] These positions included "telephone clerk," "account clerk," and "order clerk," all which are sedentary and unskilled and have a Specific Vocational Preparation ("SVP") level of two. [*Id*. at 1059.] The ALJ then asked what kind of jobs Plaintiff could work given Plaintiff's representations that she could only have limited social interactions with the public and coworkers. [*Id*.] Kerr responded that although Plaintiff could still work as an account clerk with those limitations, the order and telephone clerk positions would have more public interaction than Plaintiff's restrictions. [*Id.*] She therefore recommended substituting "document clerk" and "address clerk" positions. [*Id*.] Kerr added that having a walker or a cane would not affect someone's ability to perform these jobs nor would having to change positions from standing to sitting or vice versa. [*Id*. at 1060.]

### D. The ALJ's Findings

Upon reviewing the evidence, the ALJ concluded that since June 23, 2006, Plaintiff has had the following severe impairments: morbid obesity; degenerative disc disease; migraines; fibromyalgia; "shoulder impairment;" "status post left ankle fracture with open reduction internal fixation;" anxiety and depression. [*Id*. at 985.] The ALJ further concluded that Plaintiff had the following non-severe impairments: meralgia paresthetica; asthma and chronic obstructive pulmonary disease; hypertension; incontinence; knee injury; and cervical disc herniation. [*Id*. at 985–86.]

Notwithstanding these impairments, the ALJ concluded that since June 23, 2006, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id*. at 986.] The ALJ further found that Plaintiff had the residual functional capacity to perform

sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) with exceptions dealing with physical attributes. [*Id*. at 987.]

Finally, the ALJ concluded that prior to May 19, 2015, considering Plaintiff's age, education, work experience, and residual functional capacity, there were a significant number of jobs of in the national economy that the Plaintiff could have performed. [*Id*. at 998.] The ALJ found the vocational expert's testimony consistent with the information contained in the Dictionary of Occupational Titles. [*Id*. at 999.] However, after May 19, 2015, because of Plaintiff's age change, there were not a significant number of jobs she could perform. [*Id*.] Thus, prior to May 19, 2015, Plaintiff was not disabled but became disabled as of that date and continues to be today. [*Id*.]

## II. Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and related regulations. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing previous work, but, considering age, education, and work experience, it also must prevent her from engaging in any other type of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

Social Security regulations enumerate a five-step inquiry to evaluate whether the claimant is entitled to disability insurance benefits. 20 C.F.R §§ 404.1520(a)(4), 416.920(a)(4). At Step 1, the ALJ determines if the claimant is engaged in substantial gainful activity. If so, the claimant is

not disabled, and the claim is denied. If not, the inquiry proceeds to the next step. *Id.* § 404.1520(a)(4)(i). At Step 2, the ALJ determines if the claimant has a severe impairment or combination of impairments that is severe. If not, the claimant is not disabled, and the claim is denied. If so, the inquiry proceeds to the next step. *Id.* § 404.1520(a)(4)(ii). At Step 3, the ALJ determines if the impairment(s) meet or equal a listed impairment in the appendix to the relevant regulations (20 C.F.R. § 404, Subpart P, Appendix 1). If so, the claimant is automatically considered disabled. If not, the inquiry proceeds to the next step. *Id.* § 404.1520(a)(4)(iii). At Step 4, the ALJ determines if the claimant can perform past relevant work, which involves consideration of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citations omitted). "The RFC must be assessed based on all the relevant evidence in the record." *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). If the ALJ determines that the claimant can perform past relevant work, the claimant is not disabled, and the claim is denied. If not, the inquiry proceeds to the next step. 20 C.F.R. § 404.1520(a)(4)(iv). At Step 5, the ALJ determines whether the claimant can perform other work, given her RFC, age, education, and experience. If so, then the claimant is not disabled, and the claim is denied. If not, then the claimant is disabled. *Id.* § 404.1520(a)(4)(v); accord *Id.* § 416.920(a)(4)(i)-(v). The burden of proof is on the claimant for Steps 1 through 4. *Young*, 362 F.3d at 1000. "If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy." *Id*. (citation omitted).

### III.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Social Security Administration and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ thus will reverse the findings of the Commissioner "only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citations omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court reviews the entire administrative record, but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner * * *." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation and internal quotation marks omitted). In other words, the question upon judicial review is not whether the claimant is, in fact, disabled; even if reasonable minds could differ concerning disability, a reviewing court will affirm so long as the ALJ applied the correct legal standard and substantial evidence supported the decision. See *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

Notwithstanding that deferential review, an ALJ must build an "accurate and logical bridge" from the evidence to her conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (citation and internal quotations marks omitted)). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)); see also *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("If the Commissioner's decision lacks

adequate discussion of the issues, it will be remanded." (citations omitted)). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## IV.  Analysis

As an initial matter, while Plaintiff challenges multiple aspects of the ALJ's decision, her challenges are largely undeveloped. Indeed, at many points it is difficult to determine the contours of her arguments. Rather than simply dismissing the appeal on technical grounds, however, the Court has done its best to discern Plaintiff's challenges to the ALJ's decision and the arguments to support them. Nonetheless, the Court may only go so far in addressing arguments based on inferences from Plaintiff's briefs. As the Seventh Circuit has long held, "[i]t is not [the reviewing] court's responsibility to research and construct the parties' argument * * *." *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (internal quotation marks and citation omitted); see also *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. * * * Especially not when the brief presents a passel of other arguments * * *. Judges are not like pigs, hunting for truffles buried in briefs.").

With that difficulty addressed, the Court turns to the six claims Plaintiff appears to make in her brief. Plaintiff first argues that the ALJ failed to properly consider all her impairments when determining whether Plaintiff had a severe impairment or combination of impairments that were severe in Step 2 ("Claim 1"). [46, at 3.] Plaintiff next contends that the ALJ failed to consider all of her conditions when determining whether her impairments met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 in Step 3 ("Claim 2"). [*Id.* at 4.] Additionally, Plaintiff argues that the ALJ improperly calculated Plaintiff's RFC given her remaining physical

abilities ("Claim 3") and her mental limitations ("Claim 4"). [*Id.* at 4, 6.] Plaintiff further challenges the ALJ's decision not to consider Dr. Oommen's medical opinions ("Claim 5"). [46, at 8]; [53, at 3.] Finally, Plaintiff contests the ALJ's determinations in Step 5 as to what jobs she could perform ("Claim 6"). [46, at 9–12.]

A.    **Claim 1**

Plaintiff first argues that the ALJ erred in Step 2 of the SSA's five-step inquiry by ignoring Plaintiff's morbid obesity, dysthymic disorder, and incontinence. [46, at 3.] As explained above, in Step 2, an ALJ determines if the claimant has a severe impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). It is unclear why Plaintiff argues that the ALJ ignored her morbid obesity in determining whether Plaintiff had severe impairments given the ALJ's express recognition of Plaintiff's morbid obesity as a severe impairment during Step 2. [A.R. at 985.] Indeed, not only did the ALJ consider Plaintiff's morbid obesity, the ALJ agreed that her morbid obesity constituted a severe impairment. Similarly, with respect to Plaintiff's dysthymic disorder, the ALJ did consider it during Step 2 and concluded it was a severe impairment. As explained by the Commissioner, dysthymic disorder is a form of depression. [51, at 5 (citing https://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder)]; see also [A.R. at 1043 (impartial clinical psychologist Dr. Larry Kravitz testifying that Plaintiff's depressive symptoms are evidence of her dysthymic disorder)]. One of the severe impairments that the ALJ recognized Plaintiff had in Step 2 was depression. [A.R. at 985.] Thus, while the ALJ may have not referred to Plaintiff's dysthymic disorder by its formal name, the ALJ not only considered Plaintiff's dysthymic disorder, but found that it was a severe impairment in Step 2.

Finally, the ALJ concluded that incontinence was not a severe impairment because "nothing in the objective medical record or documentary record suggest the impairment is not

manageable by routine measures."  Plaintiff does not provide any factual or legal basis to question that conclusion.  Consequently, Claim 1 fails.

### B.    Claim 2

Plaintiff next argues that the ALJ failed to consider all of Plaintiff's conditions and all the combinations of these conditions during Step 3 when she found that Plaintiff did not meet a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [46, at 4.]  As explained above, during Step 3, the ALJ determines if the impairment(s) from Step 2 meet or equal a listed impairment in the appendix to the relevant regulations.  20 C.F.R. § 404.1520(a)(4)(iii).

Plaintiff's argument fails on several fronts.  First, Plaintiff cites the impairments listed by Dr. Ezike and submits that the ALJ failed to consider all of these impairments when she determined whether Plaintiff's conditions matched a listing.  [46, at 4.]  However, when determining whether an individual's conditions are factually equivalent to a listed impairment, the ALJ may only consider the severe impairments determined in Step 2.  See 20 C.F.R. 404.1520(a)(4); see also *Jarmon v. Barnhart*, 2004 WL 742080 (N.D. Ill. Apr. 1, 2004) ("[T]he ALJ asks whether claimant's impairment[s] [are] severe; (3) if the impairment[s] [are] severe, the ALJ determines whether the impairment[s] meet[] or equal[] one of the listed impairments * * *.").  The ALJ omitted two of the impairments listed by Dr. Ezike from her list of severe impairments in Step 2— neuropathy and nerve entrapment—and affirmatively found a third—cervical disc herniation— non-severe in light of the evidence before her.  [A.R. at 985–86, 1047–48.]  Consequently, these three impairments could not be considered in Step 3.[6]  Moreover, the ALJ found all the other

---

[6]  Importantly, Plaintiff has not asserted that the ALJ should have found these three conditions severe in Step 2.  And, even if she had, Plaintiff has not provided any factual or legal basis to challenge the ALJ's omission of these conditions or her conclusion that they are not severe impairments.

impairments listed by Dr. Ezike to be severe impairments and properly considered them in Step 3. [*Id.*]

Additionally, Dr. Ezike himself testified that none of these impairments individually or collectively met or equaled any listing. [A.R. at 1048.] Thus, the ALJ's findings in Step 3 are clearly supported by substantial evidence. See 42 U.S.C. § 405 ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive * * *."). Given that (1) an impartial doctor testified that Plaintiff's impairments did not meet a listing and (2) the ALJ decision accepted that testimony and adequately explained the balance of her relevant determinations, the Court must conclude that she created an "accurate and logical bridge" from the evidence to her conclusion. *Craft*, 539 F.3d at 673.

Finally, and most importantly, Plaintiff "has the burden of showing that [her] impairments meet a listing, and [s]he must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). For example, in *Zatz v. Astrue*, the plaintiff appealed the ALJ's decision to deny his application for disability insurance benefits. 346 Fed. App'x 107, 108 (7th Cir. 2009). Specifically, Zatz challenged, *inter alia*, the ALJ's determination at Step 3 that his impairment did not meet or equal a listed impairment. *Id*. at 110. Zatz identified one listing in which there were "compelling correspondences" between it and his diagnosis. *Id*. at 111. Nonetheless, the court of appeals concluded that these "correspondences" were not enough to prove "his condition [met] or equal[ed] each criterion of a listed impairment" and thus denied his appeal. *Id*. at 111, 113. Here, Plaintiff not only has failed to show her impairments meet or equal the criteria of a listed impairment, but she also has neglected even to identify a single listed impairment that she might meet or equal. See generally [46]. Thus, Plaintiff has not approached carrying her burden to show

that the ALJ erred in concluding that her impairments did not meet or medically equal the severity of a listed impairment.

In sum, the ALJ appropriately considered Plaintiff's severe impairments in Step 3 when determining that these impairments did not meet or equal a listed impairment; the ALJ's conclusions were supported by substantial evidence; and Plaintiff did not meet her burden to show that her impairments do meet or equal a listed impairment. Thus, Claim 2 also fails.

## C.    Claim 3

With regard to Claim 3, Plaintiff appears to argue that the ALJ did not follow SSR 96-9p in determining Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ did not properly consider her dysthymic disorder and fibromyalgia, which together cause Plaintiff to have difficulty with handling objects, moving, fatigue, and concentration. [46, at 4.] Plaintiff is incorrect. SSR 96-9p states that a person's RFC "is what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments." SSR 96–9p, Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 61 Fed.Reg. 34478, 34481 (1996). The ALJ concluded that Plaintiff could perform sedentary work, which requires the lowest amount of physical exertion. See 20 C.F.R. § 404.1567(a).

Starting with Plaintiff's fibromyalgia, the ALJ concluded that Plaintiff does suffer from the impairment and that it does restrict what she can do, but not to the point that she cannot perform sedentary work. [A.R. at 989.] In fact, the ALJ limited "claimant to sedentary level exertion to allow for some consideration of her complaints of pain." [*Id.*] Thus, not only did the ALJ consider Plaintiff's fibromyalgia and pain in determining Plaintiff's RFC, but resolved the issue at least partly in her favor by concluding that Plaintiff could only perform work at the lowest level of exertion.

With respect to handling objects, the ALJ limited the amount Plaintiff could use her hands while working. [*Id*. at 995.] Nonetheless, Plaintiff asserts that the ALJ did not consider Plaintiff's problems with movement. [46, at 4.] As the ALJ correctly pointed out, however, problems with movement and motor skills were never established in the record. [A.R. at 989.] Yet, despite this evidentiary void, the ALJ still concluded that Plaintiff could only perform sedentary work because, *inter alia*, Plaintiff's complaints of pain led the ALJ to put a limitation on standing and sitting. [*Id*.] So again, not only did the ALJ consider Plaintiff's alleged problems with moving, but she actually credited them, thus limiting Plaintiff to sedentary work in light of those challenges. [*Id*.]

The ALJ also considered Plaintiff's dysthymic disorder, fatigue, and inability to concentrate, as well as her residual mental capacity in light of these conditions. [*Id*. at 989, 996–97.] Part of the ALJ's decision to limit Plaintiff to sedentary work included an assumption that work of that nature would be limited to performing simple routine tasks with short, simple instructions and simple decision making. [*Id*. at 987.] The ALJ chose this limitation, in part, due to the testimony of the impartial psychological medical expert, Dr. Kravitz, who stated Plaintiff had dysthymic disorder. [*Id*. at 996, 1043.]

In sum, the ALJ did consider all the impairments noted by Plaintiff when determining her RFC. These impairments led the ALJ to determine Plaintiff could only perform sedentary work— which requires the lowest level of physical exertion—and limited the work to simple tasks with simple instructions. [*Id*. at 987.] Consequently, the ALJ did follow SSR 96-09 because the ALJ made her determinations in light of Plaintiff's "functional limitations and restrictions."

### D. Claim 4

While Plaintiff's third claim addressed the ALJ's failure to consider her physical ailments, Claim 4 asserts that the ALJ erred when assessing Plaintiff's RFC by failing to account for Plaintiff's mental challenges relating to concentration, persistence, and pace. [46, at 6.] But the

ALJ did consider Plaintiff's mental status. Dr. Kravitz, the psychological medical expert, found that Plaintiff had a moderate limitation on concentration, pace, and persistence and, in light of these limitations, he concluded that it would be "unlikely that she'd be able to persist on more than a simple, routine tasks in the work environment on a consistent basis" and "will probably have difficulty with understanding, remembering, [and] applying more than simple information." [A.R. at 1043–44.] The ALJ "afforded great weight" to Dr. Kravitz's testimony. [*Id*. at 997.] Thus, the ALJ limited Plaintiff's RFC to "performing simple routine tasks requiring no more than short simple instructions and simple work-related decisions * * *." [*Id*. at 987.] Consistent with this finding, the ALJ clearly made "accommodations for [Plaintiff's] mental impairments." [*Id*. at 998.] In sum, the ALJ considered Plaintiff's mental problems in concentration, persistence, and pace when assessing Plaintiff's RFC and made accommodations because of these problems. Claim 4 therefore fails.

### E.      Claim 5

Plaintiff appears to take issue with the fact that the ALJ did not consider the medical opinions of Dr. Bino Varghese Oommen, M.D.[7] [46, at 8–9]; [53, at 3.] However, the ALJ did not consider Dr. Oommen's notes "in light of the [Plaintiff's] complaints filed against the physician." [A.R. at 996.] Indeed, as the ALJ explained, she ignored Dr. Oommen's testimony because of (1) Plaintiff's "attorney's concerns that [Dr. Oommen's] records might have been altered" and (2) "the doctor's reluctance in providing these records due to the [Plaintiff's] allegedly writing 'bad' checks to [Dr. Oommen]." [*Id*. at 993.] Having raised multiple bases for questioning

---

[7] Oddly, Plaintiff also argues that the ALJ made references to Dr. Oommen's treatment frequently but cites nothing in the record to support this assertion. See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'") (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). And, a cursory review of the ALJ's opinion shows that that is not the case.

the reliability of Dr. Oommen's testimony and requested exclusion of it on those bases, Plaintiff

cannot now claim that the ALJ erred in disregarding Dr. Oommen's opinions.[8]

### F.    Claim 6

Finally, Plaintiff challenges (1) the ALJ's finding that Plaintiff had the capacity to work

jobs with a Specific Vocational Preparation level of 2 and (2) her ability to work the jobs the

vocational expert said she could work.  [*Id*. at 9–12.]  The Commissioner bears the burden in Step

5 of establishing that a claimant can perform jobs that have significant numbers in the national

economy.  20 C.F.R. 404.1560; see also *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

This burden is satisfied through expert testimony by a vocational expert, as long as that testimony

is reliable.  *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008).  If there is a conflict between the

vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), the ALJ must

resolve this conflict by getting a reasonable explanation for it from the vocational expert.  SSR 00-

4p (S.S.A. Dec. 4, 2000).

Here, the ALJ relied on vocational expert Leanne Kerr's testimony in determining whether

Plaintiff could perform a significant number of jobs in the national economy.  [A.R. at 999.]

Specifically, Kerr testified that, based on her RFC, Plaintiff could perform jobs bearing the title or

responsibilities of account clerk, document clerk, and address clerk.  [*Id*. at 1059.]  All of these

jobs, according to Kerr, are sedentary, unskilled, and SVP level 2 positions.  [*Id*.]  Importantly,

this testimony is consistent with the DOT for each of these jobs.

Plaintiff first argues that she cannot perform SVP level 2 positions and that her RFC

actually corresponds with SVP level 1 positions alone.  [46, at 10.]  However, Plaintiff's RFC does

---

[8]  Likewise, Plaintiff cannot credibly request that the ALJ, or this Court for that matter, focus only on the opinions that she believes support her claim, while ignoring the opinions that harm her claim.  There is no reason to believe that Dr. Oommen's helpful opinions are any more or less credible than his unhelpful opinions.

allow her to work SVP level 2 positions. As Plaintiff points out, at the hearing the ALJ told Kerr that "[t]his individual [Plaintiff] would be capable of performing jobs that would involve simple, routine tasks requiring no more than short, simple instructions, simple work-related decision making, with few workplace changes." [A.R. at 1058.] Plaintiff argues that this description corresponds with SVP level 1 positions. [46, at 10.] Importantly, Plaintiff does not challenge the ALJ's description of the kinds of jobs Plaintiff would be capable of doing outlined above. Rather, the only question is whether that description corresponds with SVP level 1 or level 2.

The Social Security Administration defines unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time * * * and a person can usually learn to do the job in 30 days." 20 C.F.R. § 404.1568. The Social Security Administration further explains that unskilled work corresponds to an SVP level of 1 or 2. SSR 00-4p (S.S.A. Dec. 4, 2000). It is clear that the definition in § 404.1568 corresponds with the kind of work the ALJ described to Kerr that Plaintiff was capable of performing. Therefore, neither the ALJ nor Kerr clearly erred by concluding that Plaintiff was capable of working SVP level 2 jobs.

With Plaintiff's first objection resolved, the Court turns to Plaintiff's arguments that she could not work the jobs outlined by Kerr. The first position noted by Kerr was "document clerk," DOT number 249.587-018. [A.R. at 1059.] Plaintiff argues that a document clerk is required to confer with customers and assist them with their applications and notify them of acceptance, rejections and errors on the account and that level of interaction exceeds Plaintiff's capacity for interacting with others. [46, at 11.] However, the DOT's definition of Document Clerk does not include any of that work. See DOT: Document Preparer; DOT 249.587-018. It would seem Plaintiff meant to refer to "account clerk," given that definition mentions similar work to what Plaintiff stated. See DOT: Charge-Account Clerk, DOT 205.367-014. Nonetheless, the job duties

of an account clerk are not inconsistent as a matter of law with the ALJ's finding that Plaintiff has a mild limitation in interacting with others based on the documentary evidence submitted by Plaintiff. See [A.R. at 986 (citing 14-7, 21-32, 43-54).] Further, it is Plaintiff's burden to show that the ALJ's finding as to her social limitations was incorrect; yet, Plaintiff does not assert that her social impairment is greater than mild. Finally, Kerr did consider Plaintiff's mild limitation in interacting with others, per the ALJ's request, in determining that Plaintiff could in fact work as an account clerk. See [A.R. at 1059 (Kerr responding with jobs Plaintiff could work after including a mild limitation in interacting with others).] The Commissioner has therefore met its burden of showing that Plaintiff could work as an account clerk.

Plaintiff also challenges the ALJ's conclusion that she could work as document clerk or address clerk because, she argues, both positions require a significant amount of hand use, which would be difficult if not impossible given Plaintiff suffers from swollen hands. [46, at 11.] However, the ALJ found that Plaintiff could "frequently handle" and "frequently reach" in Step 2. [A.R. at 987.] The ALJ noted these abilities when describing the Plaintiff to Kerr and thus Kerr took this into account when determining what jobs Plaintiff could do. [*Id*. at 1058.] Plaintiff does not challenge the ALJ's finding in Step 2 that Plaintiff could frequently handle and reach. See generally [46]. She therefore cannot challenge Kerr's findings that incorporated that conclusion. Plaintiff also argues that because she would have to stand for up to two hours a day and that she needs a cane to support herself, she could not work these jobs. [46, at 10.] But again, Kerr took Plaintiff's need for a cane into account and concluded that her cane use would have "no effect" on Plaintiff's ability to perform these jobs. [A.R. at 1060.] Nothing in the jobs' DOT description is inconsistent with this conclusion. See DOT: Document Preparer, DOT 249.587-018; DOT: Addresser, DOT 209.578-010; and DOT: Charge-Account Clerk, DOT 205.367-014.

Finally, nothing in Kerr's testimony conflicts with the DOT. Thus, her testimony is entitled to the presumption of reliability and the Commissioner could rely on it to meet its burden before the ALJ to establish that Plaintiff can perform jobs with significant numbers in the national economy. In sum, Kerr's conclusions are supported by substantial evidence and logically follow from that evidence. Claim 6 therefore fails.

**V.    Conclusion**

For all of the reasons set forth above, the Court denies Plaintiff's motion for summary judgment [45] and grants the Commissioner's motion for summary judgment [50]. The Court affirms the Commissioner's decision. Civil case terminated.

Date: August 7, 2017

Robert M. Dow, Jr.
United States District Judge